**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**CLEVELAND DIVISION**

| | |
|---|---|
| **BENITA FRIER**, | |
| Plaintiff, | CASE NO. 1:26-cv-992 |
| v. | |
| **UNIVERSITY HOSPITALS CLEVELAND MEDICAL CENTER and JOSH BEERS,** | **COMPLAINT WITH JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Benita Frier ("Frier"), by and through undersigned counsel, and for her Complaint against University Hospitals Cleveland Medical Center ("University Hospitals" or "UH") and Josh Beers ("Beers" or "Mr. Beers") (collectively, "Defendants"), states the following:

**INTRODUCTION**

1. The Plaintiff, Ms. Frier sues University Hospitals for violations of Title VII of the Civil Rights Act of 1964 and R.C. 4112; the Plaintiff sues Mr. Beers for violations of R.C. 4112. During her employment at University Hospitals, Ms. Frier was harassed and subjected to a hostile work environment that included sexual comments, sexual solicitations, and unwanted physical contact by her supervisor, Mr. Beers, and co-workers. Ms. Frier complained to Defendants about the harassment and Defendants failed to act reasonably in response thereto. Ms. Frier was later disciplined by Defendants in retaliation for filing her complaint(s) and subjected to discharge. She seeks entry of judgment in her favor and against Defendants as well as damages including compensatory damages, equitable relief, and attorneys' fees and costs.

**PARTIES**

2. Plaintiff, Benita Frier ("Plaintiff" or "Ms. Frier") was employed by University Hospitals Cleveland Medical Center ("University Hospitals" or "UH").

3. University Hospitals' principal place of business is located at 11100 Euclid, Cleveland, Ohio 44105.

4. Based upon information from the Ohio Secretary of State website, University Hospitals can be served through its registered agent, CT Corporation System, located at 4400 Easton Commons, Suite 125, Columbus OH 43219.

5. Upon Information and belief, Defendant Josh Beers is a resident of Cuyahoga County, Ohio, residing at 13612 York Blvd, Cleveland, OH. Defendant Josh Beers can be served personally at his home address.

6. Plaintiff is protected by Title VII of the Civil Rights Act of 1964 and R.C. 4112 because she:

   a. Is female;

   b. Was subjected to workplace harassment because of her gender;

   c. Opposed what she reasonably believed to be sexual harassment, including through her formal complaint of harassment made to Defendants and her participation in the investigation of complaints made by her concerning the conduct of her supervisor

7. Defendant University Hospitals Cleveland Medical Center is a non-profit corporation incorporated in the State of Ohio and authorized to do business in the State of Ohio.

8. Defendant Josh Beers is a "person" as envisioned by R.C. 4112.

9. At all times material, Defendant University Hospitals was and is an "employer" as envisioned by Title VII of the Civil Rights Act of 1964 and R.C. 4112, employing more than fifteen employees.

**JURISDICITON AND VENUE**

10.     This Court has original jurisdiction over Plaintiff's claims under Title VII of the Civil Rights Act of 1964 pursuant to 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction over Plaintiff's claims under R.C. 4112 pursuant to 28 U.S.C. § 1367 since those claims form part of the same case or controversy under Article III of the United States Constitution.

12.     Venue is proper for this action pursuant to 28 U.S.C. § 1391(b)(2), as Plaintiff's claims arose in this judicial district. A substantial part of the events giving rise to Plaintiff's claims occurred within the Northern District of Ohio, specifically in Cleveland, Cuyahoga County.

**FACTUAL BACKGROUND**

13.     Plaintiff was employed by University Hospitals from November 17, 2014, until her termination on September 12, 2024.

14.     Plaintiff was subjected to discrimination including sex discrimination, retaliation, hostile work environment, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 and R.C. 4112.

15.     During her employment, Plaintiff held various positions including Patient Transporter, ED Ambassador, Screener, Dispatcher, Senior Coordinator, and Shift Leader.

16.     Plaintiff's last position was Operations Support Ambassador Coordinator.

17.     Josh Beers was Plaintiff's supervisor at all times relevant to the allegations in this Complaint.

18.     In 2017, Plaintiff began experiencing workplace harassment from co-workers and Mr. Beers.

19.     Plaintiff was subjected to degrading comments such as being called "the Mamba" and hearing phrases like "you got that mamba" and "I want to feel the mamba."

3

20.     These comments were sexual in nature and based on Plaintiff's gender.

21.     In 2020, when Plaintiff became a shift leader, the harassment by Mr. Beers worsened.

22.     On or about September 3, 2021, Mr. Beers texted Plaintiff asking if he could send her sexual texts in exchange for $50.

23.     Plaintiff immediately declined Mr. Beers's sexual solicitation.

24.     In or around October 2021, Mr. Beers made sexual comments to Plaintiff about a female RN manager.

25.     In 2022, a co-worker asked Plaintiff to sit on his lap at work.

26.     Plaintiff reported the incident to Mr. Beers and requested action to stop the harassment.

27.     Rather than addressing the issue, Mr. Beers escalated the harassment.

28.     After Plaintiff's complaint, Mr. Beers texted Plaintiff asking if her cousin had "good pussy."

29.     In or around March 2022, Plaintiff sent messages to Mr. Beers expressing her emotional distress over his conduct.

30.     On or about May 21, 2022, Mr. Beers sent Plaintiff explicit sexual messages via social media.

31.     On or about July 2, 2022, Mr. Beers sent Plaintiff additional explicit sexual messages via social media.

32.     In or around March 2023, Mr. Beers sent Plaintiff another inappropriate text message stating that a former co-worker wanted to "suck his dick."

33.     During the summer of 2023, Mr. Beers physically grabbed Plaintiff's face without

her consent.

34.     When Mr. Beers grabbed Plaintiff's face, he made sexual demands, stating "you gonna have to give me the mamba."

35.     Mr. Beers mocked Plaintiff for refusing to engage with him sexually.

36.     On December 7, 2023, Mr. Beers made explicit sexual comments about Plaintiff's breasts.

37.     On December 7, 2023, Plaintiff reported the harassment to her manager, Lauren McCuley.

38.     Ms. McCuley promised an investigation into Plaintiff's complaint.

39.     Ms. McCuley took no meaningful action after Mr. Beers denied the allegations.

40.     After Ms. McCuley failed to investigate Plaintiff's complaints, Plaintiff reported Ms. McCuley and Mr. Beers to Taylor Magic in Human Resources.

41.     University Hospitals failed to conduct an adequate investigation into Plaintiff's complaints.

42.     After reporting the harassment to Ms. Magic, in or around January 2024, Mr. Beers retaliated by threatening that Plaintiff would "bring everybody down."

43.     Prior to making complaints of sexual harassment, Plaintiff had never been written up or disciplined.

44.     Plaintiff had an impeccable record prior to reporting harassment.

45.     Despite her impeccable record, Plaintiff was subjected to pretextual disciplinary actions after she complained.

46.     On April 25, 2024, Plaintiff was written up and placed on a final warning.

47.     University Hospitals stated the April 2024 discipline was for moving her car during

5

a break.

48.     The April 2024 discipline was pretextual and in retaliation for Plaintiff's complaints of sexual harassment.

49.     In or around July 2024, a co-worker informed Plaintiff that Mr. Beers and HR were "trying to get her out of there."

50.     When Plaintiff sought assistance from HR in July 2024, she was redirected to Mr. Beers.

51.     By redirecting Plaintiff to Mr. Beers, University Hospitals further escalated the hostile work environment.

52.     In the fall of 2024, Plaintiff was falsely accused of leaving a patient unauthorized.

53.     On September 12, 2024, Plaintiff was terminated.

54.     University Hospitals' stated reason for termination was patient abandonment.

55.     University Hospitals' reason for termination was pretextual.

56.     Plaintiff's termination was in retaliation for her complaints of sexual harassment.

57.     The harassment continued despite Plaintiff's complaints to management and Human Resources.

58.     University Hospitals had actual or constructive knowledge of the harassment through Plaintiff's verbal and written complaints.

59.     University Hospitals failed to investigate Plaintiff's complaints of sexual harassment.

60.     University Hospitals failed to take corrective action against Mr. Beers or other harassers.

61.     No corrective measures were taken against Mr. Beers despite Plaintiff's multiple

complaints.

62.     None of the co-workers or supervisors mentioned in Plaintiff's reports of harassment were ever suspended or otherwise disciplined for their sexually explicit comments or conduct.

63.     By failing to act promptly and reasonably in response to Plaintiff's complaints, University Hospitals violated Plaintiff's right to be free from harassment in the workplace.

64.     University Hospitals, through the actions more specifically alleged above, affected one or more "terms, conditions or privileges" of Plaintiff's employment as envisioned by Title VII and R.C. 4112.

65.     The treatment to which Plaintiff was subjected was based, at least in part, upon the fact that Plaintiff is female.

66.     The treatment to which Plaintiff was subjected was based, at least in part, upon the fact that Plaintiff opposed what she reasonably perceived as sexual harassment.

67.     Plaintiff's complaints were a substantial and/or motivating factor in University Hospitals' decision to discipline and terminate Plaintiff.

68.     The decisions to discipline and terminate Plaintiff would not have been made absent her membership in one or more of the protected classes described above.

69.     The decisions to discipline and terminate Plaintiff would not have been made absent her protected opposition to sexual harassment.

**COUNT I: SEX DISCRIMINATION AGAINST UNIVERSITY HOSPITALS**

70.     Plaintiff realleges and incorporates all preceding paragraphs.

71.     Plaintiff is a member of a protected class, to wit: sex.

72.     Plaintiff was subjected to adverse employment actions, including a Final Written Warning and termination.

7

73.     Plaintiff was subjected to different terms and conditions of employment because of her sex, including unwanted sexual comments, sexual solicitations, and physical contact.

74.     University Hospitals had actual or constructive knowledge of the harassing conduct through Plaintiff's verbal and written complaints to management and Human Resources.

75.     University Hospitals failed to properly investigate Plaintiff's complaints based on her gender.

76.     University Hospitals' proffered reasons for disciplining and terminating Plaintiff are pretext for unlawful sex discrimination.

77.     As a direct and proximate result of University Hospitals' unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

**COUNT II: HOSTILE WORK ENVIRONMENT/HARASSMENT AGAINST UNIVERSITY HOSPITALS**

78.     Plaintiff realleges and incorporates all preceding paragraphs.

79.     The egregious harassing conduct was so severe and pervasive that it affected Plaintiff's terms and conditions of employment.

80.     The harassment created a work environment that unreasonably interfered with Plaintiff's ability to perform her role and resulted in retaliatory action, including unwarranted discipline and termination.

81.     The conduct Plaintiff endured was both subjectively and objectively offensive.

82.     University Hospitals was aware of the harassment and hostile work environment based upon Plaintiff's repeated complaints to Lauren McCuley and Taylor Magic in Human

Resources.

83.     University Hospitals failed to conduct an adequate investigation into Plaintiff's complaints.

84.     University Hospitals failed to take immediate and appropriate corrective action to ensure the harassing conduct ceased.

85.     No corrective measures were taken against Mr. Beers or other harassers despite Plaintiff's multiple complaints.

86.     University Hospitals had actual or constructive knowledge of the harassing conduct and hostile work environment through Plaintiff's verbal and written complaints.

87.     As a direct and proximate result of University Hospitals' unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

88.     Plaintiff is entitled to recover her attorneys' fees and costs pursuant to Title VII and Ohio R.C. 4112.

**COUNT III: RETALIATION AGAINST UNIVERSITY HOSPITALS AND JOSH BEERS**

89.     Plaintiff realleges and incorporates all preceding paragraphs.

90.     Plaintiff engaged in a protected activity when she lodged complaints about sexual harassment, discrimination, and hostile work environment to Lauren McCuley and Taylor Magic in Human Resources.

91.     University Hospitals and Josh Beers were aware of Plaintiff's engagement in the protected activity.

9

92. University Hospitals failed to commence an adequate investigation into Plaintiff's complaints.

93. University Hospitals subjected Plaintiff to a Final Written Warning and termination because of her complaints of unlawful sexual harassment.

94. Josh Beers threatened Plaintiff in January 2024 that she would "bring everybody down" in retaliation for her complaints.

95. University Hospitals and Josh Beers engaged in retaliatory conduct against Plaintiff by disciplining and terminating Plaintiff's employment.

96. University Hospitals' proffered reasons for Plaintiff's discipline and termination are simply pretext for retaliation.

97. Plaintiff's complaints were a substantial and motivating factor in University Hospitals' decision to discipline and terminate Plaintiff.

98. As a direct and proximate result of University Hospitals' and Josh Beers' unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

**COUNT IV: AIDING AND ABETTING AGAINST JOSH BEERS**

99. Plaintiff realleges and incorporates all preceding paragraphs.

100. Pursuant to Ohio R.C. § 4112.02(J), it is unlawful for any person to aid or abet unlawful discrimination.

101. Plaintiff is a member of a protected class because of her gender.

102. By making complaints about sexual harassment, Plaintiff engaged in activity protected by Ohio R.C. § 4112.

10

103.    By subjecting Plaintiff to sexual harassment and by failing to address and end the sexual harassment Plaintiff endured, Josh Beers aided and abetted University Hospitals in their sexual harassment of Plaintiff.

104.    By failing to address and end the sexual harassment Plaintiff endured, Josh Beers aided and abetted University Hospitals in the hostile work environment to which they subjected Plaintiff.

105.    By threatening and disciplining Plaintiff after she complained, Josh Beers aided and abetted University Hospitals in their retaliation against Plaintiff.

106.    As a direct and proximate result of Josh Beers' unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damages, including but not limited to past and future economic and non-economic compensatory damages, back pay, front pay, pain and suffering, emotional distress, and the loss of pay, bonuses, benefits, and other compensation and other privileges and conditions of employment.

**WHEREFORE**, Plaintiff prays for the following relief:

a.    Judgment in her favor and against Defendants for violation of the anti-discrimination/anti-harassment/anti-retaliation provisions of Title VII and R.C. 4112;

b.    Judgment in her favor and against Defendants for actual and compensatory damages, including back pay, emotional distress, and front pay, in an amount to be determined by a jury of her peers;

c.    Judgment in her favor and against Defendants for her reasonable attorneys' fees and litigation expenses;

d.    Declaratory judgment that Defendants' practices toward Plaintiff violate Plaintiff's rights under Title VII and R.C. 4112;

11

e.      An order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 27, 2026

Respectfully submitted,

*s/J. Corey Asay*
J. Corey Asay
HKM EMPLOYMENT ATTORNEYS LLP
312 Walnut Street, Suite 1600
Cincinnati, Ohio 45202
T: (513) 318-4496
F: (513) 318-4496
E: casay@hkm.com

*Counsel for Plaintiff*